UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE DRESSLER,<br>    Petitioner, | : <br> : <br> : | CIVIL CASE NO.<br>3:21cv1055 (JCH) |
| v. | : <br> : | |
| UNITED STATES OF AMERICA,<br>    Respondent. | : <br> : <br> : | AUGUST 3, 2022 |

**RULING RE: PETITIONER'S <u>PRO SE CORAM NOBIS</u> MOTION TO VACATE CONVICTION  (DOC. NO. 1)**

**I.    INTRODUCTION**

In this case, <u>pro se</u> petitioner Lawrence Dressler ("Dressler") has filed a writ of error <u>coram nobis</u> to vacate his conviction.  For the reasons set forth below, Dressler's Motion (Doc. No. 1) is denied.

**II.    BACKGROUND**

On February 14, 2013, a grand jury indicted Dressler on charges of conspiracy to commit fraud and making a false statement in connection with several fraudulent real estate transactions in which he acted as a closing attorney.  <u>See</u> Second Superseding Indictment, 11cr192 (Doc. No. 148).  On October 3 of the same year, Dressler pled guilty before this court to Count One of the Indictment for conspiracy to commit fraud, stipulating that he conspired to defraud mortgage lenders and financial institutions.  <u>See</u> Plea Agreement, 11cr192 (Doc. No. 285).  In his Plea Agreement, Dressler waived his right to appeal or collaterally attack his conviction or sentence if his sentence did not exceed fifty-one months of imprisonment, a five-year term of supervised release, a $2.5 million fine, a $1.6 million order of restitution, and a $6 thousand order of forfeiture.  <u>See</u> <u>id.</u>  The court ultimately sentenced Dressler to twenty months of incarceration, three

1

years of supervised release, and joint and several restitution totaling $403,450.75, entering judgment on March 25, 2014.  See Dressler Judgment, 11cr192 (Doc. No. 459).

Shortly after Dressler was sentenced, two of his co-defendants, Andrew Constantinou and Jacques Kelly, were tried in a two-week jury proceeding.  See Minute Entry, 11cr192 (Doc. No. 471).  At Constantinou and Kelly's public hearing, a defendant in a related case, Jeffrey Weisman, testified as a cooperating defendant.  The jury found Constantinou guilty of conspiracy and Kelly guilty of conspiracy, wire fraud, and making a false statement to a financial institution.  See Constantinou Judgment, 11cr192 (Doc. No. 680); Kelly Judgment, 11cr192 (Doc. No. 600).  The two were sentenced to 60 months and 15 months imprisonment, respectively.  See id.  Weisman was sentenced on September 25, 2015, after having previously waived indictment and pled guilty.  See Weisman Judgment, 12cr155 (Doc. No. 49).

Dressler was released from custody on November 2, 2015.  See Inmate Locator, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 21, 2022).  After his release, he filed several post-conviction motions which the court denied.  See Mot. for Discovery (Doc. No. 779); Mot. for Relief from Restitution (Doc. No. 795); Mot. for Reconsideration (Doc No. 800).  He filed the instant Motion for Coram Nobis Relief pro se on August 2, 2021.  See Mot. for Coram Nobis Relief (Doc. No. 1).  In his Coram Nobis Motion, he argues that the government violated his right to due process by withholding exculpatory and impeachment evidence from his defense counsel prior to his plea and sentencing.

### III. LEGAL STANDARD

The writ of error coram nobis "provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody.'" Chaidez v. United States, 568 U.S. 342, 345 n.1 (2013). In the interest of finality, the writ is available only in "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" United States v. Denedo, 556 U.S. 904, 911 (2009) (quoting United States v. Morgan, 346 U.S. 502, 507 (1954)). Relief under the writ is therefore appropriate only where "errors of the most fundamental character have rendered the proceeding itself irregular and invalid." Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (quotation marks omitted). Indeed, the Supreme Court has noted that "it is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996).

Courts considering a petition for the writ must "presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." See Mandanici, 205 F.3d at 524 (citation omitted). Ordinarily, courts are "particularly solicitous" of pro se litigants. See Tracy v. Freshwater, 623 F.3d 90, 102. However, where, as here, the self-represented litigant is an attorney, the court typically affords no such benefit. Id.

## IV.     DISCUSSION

Dressler argues that the government "failed to provide crucial exculpatory information" to his attorney before he pled guilty in 2013.  See Mot. for Coram Nobis Relief at 2.[1]

First, he contends that the government did not inform his attorney of two purportedly exculpatory statements that Weisman had made about the circumstances surrounding the transactions at issue in the mortgage fraud conspiracy.  Id.  Dressler did not learn of Weisman's statements until Weisman's September 2015 sentencing—nearly two years after Dressler's October 2013 plea.  Id.  At Weisman's sentencing, the government represented to the undersigned that: (1) Weisman had "referred certain fraudulent files to another attorney because he knew that this attorney would not have problems doing the deal so he was putting other people in danger"; and (2) "Mr. Weisman thought that [the closing of co-defendant Jacques Kelly] was a red flag to him because he didn't want to get caught."  Id. at Ex. A.  Dressler asserts that, if he had known about Weisman's statements, he would have had "second thoughts" about pleading guilty rather than going to trial.  Id. at 2.

Dressler also argues, in his Reply,[2] that the government failed to disclose certain medical information from Weisman's Presentence Investigation Report ("PSR") from his

---

[1] Dressler's Motion and Reply contain numbered blocks of text, but in this Ruling, the court cites to the filings' CM/ECF page numbers.

[2] Dressler's Reply also mentions that he has raised "serious Constitutional issues" about "selective prosecution."  See Dressler Reply at 4.  Dressler has neither explained how he was subjected to unconstitutional selective prosecution, nor has he offered any evidence.  In any event, any selective prosecution argument is waived, as he raised it for the first time in his Reply.  Arguments put forth for the first time in a reply brief are waived because they deprive the opposing party of an opportunity to brief the new issues.  See Farmer v. United States, No. 12-CR-758, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) (collecting cases and specifying that "courts have routinely applied this rule to pro se litigants).

4

2015 sentencing.[3]  See Dressler Reply at 2.  Dressler contends that Weisman's PSR, along with his later testimony at his bar reinstatement proceedings, reveals that Weisman was suffering from mental health conditions and excessive alcohol use.  See id. at 1-2; see also Weisman Bar Reinstatement Transcript, 11cr192 (Doc. No. 818).  Dressler contends that this could have been useful impeachment evidence, as it was "highly relevant to Mr. Weisman's ability to recollect", and Weisman would have been the "only witness of any substance" who could have testified against Dressler at trial.  Dressler Reply at 2.

In opposing Dressler's Motion, the government argues, first, that Dressler waived his right to challenge his conviction in his Plea Agreement.  See Gov't Opp'n at 1.  Even if the waiver were not effective, they contend, he could not meet the stringent standard to obtain a writ of coram nobis.  Id.  The court agrees with the government on both grounds.

### A.     Whether Dressler Waived His Right to Seek Coram Nobis Relief

The government  argues that Dressler's Plea Agreement waiver of the right to "appeal or collaterally attack" his sentence "in any proceeding" bars him from seeking coram nobis relief.  Dressler offers no counterargument to the government's assertion that the waiver applies to his coram nobis Motion.

"It is well-established that, absent certain exceptions, a defendant's waiver of the right to appeal or collaterally attack a sentence within an agreed-upon Sentencing

---

[3] Generally, PSRs are sealed to the public.  However, Dressler points out that Weisman's PSR and other portions of his criminal file are now publicly available, as unsealed versions of the documents were filed in a disciplinary proceeding against Dressler.  See Dressler Reply at 1 (citing Chief Disciplinary Counsel v. Jeffrey I. Weisman, CV13-6018366-S).

Guidelines range is enforceable." [4]  Held v. United States, No 3:08-CV-1189, 2009 WL 179820, at *2 (D. Conn. Jan. 2009) (citing Garcia–Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001); United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998)). Such waivers are valid where the record demonstrates that they were made knowingly, voluntarily, and competently.  United States v. Coston, 737 F.3d 235, 237 (2d Cir. 2013).  Courts in this Circuit have repeatedly held that waivers of the right to appeal or collaterally attack apply with equal force to petitions for coram nobis relief.  See Shen v. United States, No. 12-CR-00068 (DLI), 2022 WL 229371, at *2 (E.D.N.Y. Jan. 26, 2022) (holding that a waiver of the right to collateral attack bars a petitioner from coram nobis relief); United States v. Beckish, No. 17 CR. 569 (ER), 2020 WL 4500178, at *2 (S.D.N.Y. Aug. 5, 2020) (determining that appeal waiver applied to petition for writ of coram nobis); United States v. Bastien, 111 F. Supp. 3d 315, 318 (E.D.N.Y. 2015) (collecting cases for the proposition that a plea agreement appeal applies to petitions for writ of aurita querela or coram nobis); United States v. Sanchez, No. 03 CR. 965 SHS, 2010 WL 5222131, at *2 (S.D.N.Y. Dec. 22, 2010) (stating that a collateral attack waiver barred petitioner from seeking coram nobis relief, although the writ was unavailable to petitioner, who was still in custody).

---

[4] There are certain limited exceptions to this rule, none of which are at issue in the case. These exceptions include:

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility.

United States v. Gomez–Perez, 215 F.3d 315, 319 (2d Cir. 2000) (internal quotations and citations omitted).

In his Plea Agreement, Dressler waived his right to "appeal or collaterally attack in any proceeding . . . the conviction or sentence" if his sentence did not exceed fifty-one months of imprisonment, a five-year term of supervised release, a $2.5 million fine, a $1.6 million order of restitution, and a $6 thousand order of forfeiture.  See Dressler Plea Agreement, 11-cr-192 (Doc. No. 288).  Dressler's sentence of twenty months of imprisonment, three years of supervised release, and $403,450.75 of restitution did not exceed the threshold of his appeal waiver.  See Dressler Judgment, 11cr192 (Doc. No. 459).  Thus, Dressler's appeal waiver is effective, and he is barred from "collaterally attack[ing]" his conviction or sentence through "any proceeding", including the instant petition for a writ of coram nobis.  See Plea Agreement; see also Chaidez, 568 U.S. at 345 n. 1 (characterizing the writ of coram nobis as a "way to collaterally attack a criminal conviction").

      B.     Whether Dressler Merits Coram Nobis Relief

Even if Dressler had not waived his right to collaterally attack his conviction, the government contends that he does not merit coram nobis relief.

To obtain relief pursuant to a writ of error coram nobis, a petitioner must meet a high bar by showing: (1) "circumstances compelling such action to achieve justice"; (2) "sound reasons . . . for failure to seek appropriate earlier relief"; and (3) that the petitioner "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014) (quoting Foont, 93 F.3d 76 at 79).  Dressler satisfies none of these three prongs.

      1.     Compelling Circumstances

Dressler cannot demonstrate that the circumstances justify coram nobis relief. To show compelling circumstances, a petitioner must show that a procedural defect led

to a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974). Here, Dressler argues that the prosecution violated his constitutional right to due process by failing to disclose impeachment and exculpatory evidence before Dressler entered into his Plea Agreement. However, his argument falls short because the government was not obliged to disclose impeachment evidence, and he has made no showing that the government withheld exculpatory evidence.

With respect to impeachment evidence, the Supreme Court has held that the prosecution's failure to disclose impeachment evidence prior to a guilty plea does not amount to a violation of a defendant's constitutional rights. United States v. Ruiz, 536 U.S. 622, 633 (2002). Thus, to the extent that Dressler argues that the government failed to disclose impeachment information about Weisman's mental state and credibility before Dressler pled guilty,[5] his rights have not been violated and no compelling circumstance exists.

As to exculpatory evidence, the Second Circuit has expressed doubt as to whether a criminal defendant is entitled to exculpatory evidence possessed by the prosecution prior to a guilty plea. See Friedman v. Rehal, 618 F.3d 142, 154 (2d Cir. 2010) (explaining that the Supreme Court's decision in United States v. Ruiz creates uncertainty about pre-plea production of exculpatory material); see also Alvarez v. City of Brownsville, 139 S. Ct. 2690 (2019) (denying certiorari and declining to resolve a circuit split as to whether prosecutors are constitutionally required to disclose

---

[5] The court also notes that Dressler raises his argument regarding impeachment evidence only in his Reply brief and not in his initial Motion. Thus, even if his faulty impeachment evidence argument had merit, he has waived it. See p. 4 n. 1, supra (noting that arguments raised for the first time in a reply brief are waived).

exculpatory evidence during the plea-bargaining process).  However, even if Dressler <u>did</u> have a right to any exculpatory information possessed by the government before his plea, he has failed to show that the information the government allegedly withheld was material to his case.

The Supreme Court has made clear that "[t]he suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ."  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  Such evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).

Here, Dressler has identified two statements by Weisman (relayed by the government at his sentencing) that Dressler contends are exculpatory: (1) that Weisman "referred certain fraudulent files to another attorney because he knew that this attorney would not have problems doing the deal so he was putting other people in danger"; and (2) that Weisman "thought that [the closing of co-defendant Jacques Kelly] was a red flag to [Weisman] because he didn't want to get caught." Mot. for Coram Nobis Relief at 2.  However, this court presided over the entire case and does not understand the basis for Dressler's conclusory allegation that these statements were "clearly exculpatory . . . with regard to [Dressler's] criminal liability."  Mot. for <u>Coram</u> <u>Nobis</u> Relief at 3. Moreover, even if the statements were somehow exculpatory, there is no indication that they were "material" to Dressler's guilt, as there is no "reasonable probability" that the "result of the proceeding would have been different" had Dressler known about

Weisman's statements.  See Bagley, 473 U.S. at 682.  This court presided over a trial of two of Dressler's co-defendants, as well as the pleas and sentencings of his remaining co-defendants.  There was compelling and overwhelming evidence that Dressler committed the crime to which he pled guilty.  He stipulated, in his Plea Agreement, that he "knowing and wilfully conspired . . . to defraud mortgage lenders and financial institutions" by "obtaining fraudulent mortgages."  See Plea Agreement at 10.  He "act[ed] as a closing attorney" in seven fraudulent real estate transactions, and prepared a "materially false HUD-1 form."  Id.  Thus, this court cannot conclude that there is a reasonable probability that, had the two statements been disclosed, they would have changed the outcome of Dressler's decision to plead guilty.  See Bagley, 473 U.S. at 682.

Without any indication that the statements were exculpatory or "material" to Dressler's case, see id., the court cannot find that a "complete miscarriage of justice" occurred such that compelling circumstances warrant coram nobis relief, Davis, 417 U.S. at 346; see also Durrani v. United States, 294 F. Supp. 2d 204, 215 (D. Conn. 2003), aff'd, 115 F. App'x 500 (2d Cir. 2004) (denying coram nobis relief where a defendant failed to show that undisclosed evidence was material).

    2.    Sound Reasons for Delay

Dressler has also failed to show "sound reasons" for his delay in seeking relief.  Dressler argues that he discovered the allegedly exculpatory statements in transcripts from Weisman's September 2015 sentencing.  See Mot. for Coram Nobis Relief at 2.  However, Dressler does not elaborate as to when he became aware of the statements in Mr. Weisman's 2015 sentencing transcripts.  Indeed, he has provided scant explanation as to why he waited nearly six years after Weisman's sentencing to file the

instant Motion seeking relief for the alleged Brady violation. Courts in this Circuit have rejected petitions for delays shorter than that of Dressler. See Nordahl v. United States, 425 Fed.Appx. 35 (2d Cir. 2011) (unpublished opinion) (three-and-a-half years); Mastrogiacomo v. United States, No. 90–cr–565 (KTD), 2001 WL 799741, at *2 (S.D.N.Y. July 16, 2001) (three years). Moreover, Dressler offers only a short, one-sentence explanation for his delay, stating: "[t]he fact that the undersigned waited a few years to file this motion, pro se, should be considered in light of the substantial imbalance in resources, and bargaining power, between the undersigned and the government." See Dressler Reply at 3. While the court recognizes that the government undoubtedly enjoys a significant resource advantage over most criminal defendants, neither this imbalance nor a lack of bargaining power has any bearing on Dressler's ability to timely file a coram nobis petition. Thus, he has not demonstrated sound reasons for his delay in seeking relief.

        3.      Continuing Legal Consequences

Lastly, Dressler has failed to establish that he suffers continuing legal consequences. He asserts, only, that he "suffers from numerous restrictions in society" as a convicted felon "which will continue for the rest of [his] life." See Mot. for Coram Nobis Relief at 3. This vague claim does not specify an "outstanding adverse legal consequence[ ]", United States v. National Plastikwear Fashions, 368 F.2d 845, 846 (2d Cir.1966) (per curiam), that would warrant granting the "extraordinary remedy" of coram nobis relief, Fleming v. United States, 146 F.3d 88, 91 (2d Cir. 1998); see also Moskowitz v. United States, 64 F. Supp. 3d 574, 580–81 (S.D.N.Y. 2014) (loss of standing in the community, pecuniary loss from prior fine, and inability to serve on a jury do not constitute continuing legal consequences).

Furthermore, the vast majority of felony convictions impose "restrictions" on defendants until their civil rights are restored. If unspecified "restrictions" constituted continuing legal consequences justifying coram nobis relief, virtually every conviction would qualify, rendering the "continuing legal consequences" prong meaningless. "That was not the Second Circuit's intent in limiting this 'extraordinary' remedy." Moskowitz, 64 F. Supp. 3d at 580–81 (citing Fleming, 146 F.3d at 91). Thus, Dressler has not established that he suffers continuing legal consequences for the purposes of a coram nobis petition.

Because Dressler cannot satisfy the three-pronged test for coram nobis relief, the court would deny his Motion on the merits even if his Plea Agreement appeal waiver were ineffective.

C.     Interrogatories

The government notes in its Opposition that Dressler has served interrogatories seeking information regarding the two purportedly exculpatory statements made by Weisman. See Gov't Opp'n at 9 n. 2. Dressler is not "entitled to discovery as a matter of course, but must show good cause for his request." Perez v. United States, 274 F.Supp.2d 330, 336 (E.D.N.Y.2003) (citing Bracy v. Gramley, 520 U.S. 899, 904 (1997)).[6]

---

[6] The Second Circuit has observed that, "[b]ecause of the similarities between coram nobis proceedings and section 2255 proceedings, the section 2255 procedure often is applied by analogy in coram nobis case," United States v. Mandanici, 205 F.3d 519 (quoting Fleming, 146 F.3d at 90 n. 2) (internal quotation marks omitted). Thus, the court, like other courts in this Circuit, applies the section 2255 standard for permitting discovery to Dressler's Motion for Coram Nobis relief. See, e.g., Durrani v. United States, 294 F. Supp. 2d 204, 217 (D. Conn. 2003), aff'd, 115 F. App'x 500 (2d Cir. 2004).

In his briefing, Dressler has offered no evidence or argument to support a finding of good cause. Given that Dressler lacks a colorable claim and has delayed in filing the instant Motion, the court denies his discovery request. See Durrani v. United States, 294 F. Supp. 2d 204, 217 (D. Conn. 2003), aff'd, 115 F. App'x 500 (2d Cir. 2004) (denying discovery request of coram nobis petitioner for "lack of a colorable claim, [ ] time delay, and [ ] inevitably enormous burden that would be placed on the government").

**V.    CONCLUSION**

For the foregoing reasons, Dressler's Coram Nobis Motion to Vacate the Conviction (Doc. No. 1) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of August 2022.

  /s/ Janet C. Hall
Janet C. Hall
United States District Judge